United States v. Eddie Lamont Bell. Mr. O'Neill you may proceed. May it please the court. To enhance Mr. Bell's sentence for possessing a firearm capable of accepting a high-capacity magazine, the government had to prove by a preponderance of the evidence that the 29-round magazine found in Mr. Bell's truck was compatible with his pistol. The government did not introduce before the district court sufficient evidence to show compatibility. It did not show that the 29-round magazine was attached to Mr. Bell's pistol. Rather, there was a nine-round magazine attached to the pistol. Further, the government did not introduce evidence that the pistol came standard with a 29-round magazine, nor did it introduce any evidence that the pistol and the magazine actually fit together. You have two issues. The exception responsibility, you preserve this one subject to plain error, correct? That's correct, Your Honor. So that means we would look at the full record to decide whether the enhancement can be supported? That is correct, Your Honor. So then we zero in on Detective Dolan's statement? I don't know if the court would like me to zero in on it. I certainly can't. Well, I guess the difficulty there is if he says the two belong together and there's no objection and then there's no rebuttal evidence, a little hard to say even if maybe we can now on appeal say they're inconsistencies, what's the authority that allows you to litigate those in front of us rather than at a sentencing hearing? So I think there are a couple of problems with Detective Dolan's statements. The first one I want to zero in on, what is the statement that it belonged together means? Right, but you're my threshold question is aren't these, aren't those type of arguments ones you would have to have presented to the district court? Let's impeach him. I don't think so, Your Honor, because I'm not, I'm not saying that any of the statements, I'm not, well my first argument about belonged is not that it was incorrect. It's that it doesn't support what the government cites it for. So if I, yeah, elaborate a little bit on that. You're not making a magic words argument, right? Compatible, belong, they all sound pretty much to a common ponderance. Well, so, I mean, let's talk about what belonged means, right? When I hear Detective Dolan testify that the large capacity magazine belonged to the pistol, that indicates to me that they, that it came with, that it came standard with that pistol. But Detective Dolan three or four questions later testifies that this 29 round magazine did not come standard with that pistol. Now I could also see belong meaning that they were attached together, but we know from the facts that the district court accepted in the precedence report that the 29 round magazine and the pistol were not attached. And so I think what the government is trying to say is that the statement that they belong together show that they actually fit. But I don't think that's what belong means. I have a closet full of suits that belong to me but no longer fit for various reasons. Do we even know that Judge Counts considered the testimony from the preliminary hearing? Judge Counts doesn't rely upon that in any way, never references. He didn't hear the Detective Dolan with his somewhat interesting testimony. And he never said he was relying on it in his sentence. So shouldn't we ask Judge Counts what he was relying upon in deciding that information? I think that's right, Judge O'Rod. I think the first, or Chief Judge O'Rod, sorry. I think the first problem with Detective Dolan's testimony is that it happened at a preliminary and detention hearing and was to a magistrate court. So that was not in any way before Judge Counts at the district court's determination. And he didn't rely upon it in his reasoning at all. That's correct. He didn't mention that he relied on it in any way. There's no indication that it was ever even before Judge Counts in any way. And belonged is inconsistent with the idea that it didn't come together. And the fact that it's of the same manufacturer, even if they're manufactured by the same manufacturer. I completely agree with you, Judge. How can you completely agree and still have said what you said to me, right? The whole reason the district judge didn't focus on it is no one told him to focus on it. There was no objection. So I thought you said to me at the beginning, we do look at anything in the entire record. You as a court, Judge Higgins . . . We're assessing whether an enhancement should be reversed on plain error. I agree with . . . Before we decide is there a miscarriage, we look at the whole record. So, are you saying that the fact that the judge didn't somehow divine that you actually meant to object means we have to look at what he said? Why would he have said anything if no one objects? I'm sorry. So I would like to back up real quickly to answer the question, Judge Higgins. So, first of all, the district court did make a determination that this offense involved a large capacity magazine. Regardless of whether there was an objection or not, the district court, when adopting the precedence report, found that that plus two enhancement or that determination that the offense level was the A1 offense level made a determination that there was a high capacity magazine. Now, I do agree with you that on plain error review, you look to the entire record. I do think, though, the fact that this finding or this testimony, this evidence was not in front of Judge Counts is relevant to how you look at the entire record and, you know, what you do with that record. Here, the government is asking you to do a lot of work on Detective Dolan's testimony to find it sufficient to support the enhancement. I think what I thought they're saying is, since the review is for plain error, there's not just got to be error, there's got to be obvious error. So, when you point to a case, what establishes obvious error when we have in the full record an officer saying the two belong together, number two, it's proximate, and number three, same caliber. What case do you have from any circuit that says those three are obvious error given the enhancement? So, this court's decision in Luna Gonzales tells us . . . I was on Luna Gonzales. That, with a footnote, we made clear. There was nothing except proximity. I agree that there was nothing except for proximity in Luna Gonzales. I don't think that there's more here either, though. Does Luna Gonzales also say that there must be evidence that they actually fit? Then that's what . . . So, is there evidence in this record that they actually fit? No, there is not, Judge Alright. And if there was testimony, Judge Higginson, at the preliminary and detention hearing by Detective Dolan saying the large capacity magazine that contains 29 rounds, not what he said, that it should say in 28, but the large capacity magazine that contains 29 rounds actually fit with the pistol that Mr. Bell possessed, then I think I would have a much harder argument here, even if Judge Counts didn't consider it. But the government is . . . I guess, procedurally, if the PSR says something and there is no objection to it, you have to rebut that. The PSR has to contain sufficient evidence . . . Indicia of reliability. Indicia of reliability. Yes, sir. And here it did not contain evidence with sufficient Indicia . . . But that's your real attack, is that the PSR paragraph that asserts that the two belong, attach, compatible, has no Indicia of reliability? That's certainly part of my argument, yes. But I also think that the preliminary and detention hearing does not . . . What's your best, I guess, back to my question, what is your best plain error case where there was no objection and the district court just accepted the PSR because no one said don't? I mean, I think Luna Gonzalez, as well as Garza and Romero are my best plain errors. What's the other one? United States v. Romero, 2022, Westlaw, 3584873, and United States v. Garza, 2023, Westlaw, 3918993. Well, it's just like . . . is this like the bearer arrest records cases that we say, you can't, just because it's in the PSR does not give it Indicia of reliability unless there's meat on the bones in the PSR that the district court adopts? That's correct, Judge Elkins. And is there any meat on the bones here? There is no meat on the bones. And in fact, a 9mm is different than the AR-15s or the AR-style rifles that we dealt with in the Lyon case, which are designed to be cross-compatible. The 9mm is not a cross-compatible gun by type, is it? It's a minor correction, and I made this mistake. Am I wrong? It's a .40 caliber, not a 9mm. Oh, I'm sorry. The 9mm was the shells found around the trigger. Okay, well, I apologize. Oh, no, but I . . . But that's true about this, too, isn't it? That's . . . This is not the AR-style that was designed to be cross-compatible, is it? It is not. Okay. So this is not. Okay, I apologize, but . . . Is that a point you're making where you're asking us to take judicial notice? Where is that in the record? Your Honor, I'm not asking . . . That these two are actually incompatible. Where is that in the record? That would be exactly what you would show to Robutt. Judge Higginson, there is nothing in the record showing that all .40 caliber pistols accept any magazine that also accepts .40 caliber ammunition. No, but I thought you just agreed these two actually are incompatible. I'm sorry? I thought you just agreed that these are actually incompatible items. I do not know whether the .40 caliber magazine that Mr. Bell possessed, I do not know whether it was compatible with his pistol. I don't have any information about that. But I do not think the fact that they were both . . . Is there any circuit that says that before a district judge can enhance, you have to actually fit them together? Is there any circuit that puts that burden, that actually literally put like Lego put them together? This Court has said that that's one way of demonstrating compatibility, and I agree that it is, but I think there are other ways as well. I think if the probation officer had, you know, talked to the agents or done research and found that all .40 caliber pistols . . . What's the remand, I mean, applying Luna-Gonzalez, remind me what you said in your reply brief. What do you want us to do? Send it back so they can actually put the two together? I wouldn't . . . So, I think I'm . . . I think this Court, this panel is required by Hernandez to remand with that instruction. I, for purposes of further review, would request that you remand and not give the government a second bite at the apple, but I think that argument is foreclosed by Hernandez. Okay. So this is just . . . Even if you win, this is just going to get resolved. We'll find out if they click together or not. We will find out, and I think that that's what we should do. I think we should, you know, send it back to . . . What about the acceptance responsibility? Because that's your preserved issue. Yes, sir. So, I'll turn to acceptance of responsibility. Mr. Bell made an important decision here not to put the government to its burden at trial. He decided to accept responsibility by admitting what he did, that he was a felon in possession of a firearm. He did so without a plea agreement. There was no negotiation between him and the government. He did what many people in his situation do and hoped to get credit for accepting responsibility at the time of sentencing as a result of his guilty plea. I would never urge this Court that that's enough by itself, but here, that is significant evidence of his acceptance of responsibility, that he admitted the facts not only at his guilty plea, but also in an interview with his probation officer, and what I would argue to this Court is that when Mr. Bell failed to de-escalate a situation with a fellow inmate, or as the district court put it, you know, engaged in fighting, that was not a failure to withdraw from criminal conduct sufficient to negate the acceptance of responsibility. Phillips is on point, and yet it seems like we're sort of to blame here because our court keeps issuing unpublished opinions. Is that fair to say? In other words, just about anyone waiting for sentencing is going to be in jail, and they're going to be housed with somebody, and they're going to end up in a fracas. Is our, the direction of all our unpublished law that every time they lose, accept responsibility? The unpublished law that I'm seeing consistently finds that there was an assault. Here the district court didn't even engage in that finding. The probation officer's response characterized Mr. Bell as failing to de-escalate. The district court characterized it as engaging in fighting, and I think if you look at the video, you see that Mr. Bell's roommate, you know, initiated the confrontation after he politely touched him and caused him to wake up, that Mr. Bell's roommate hit him twice in the head, once with his fist and the other with a bucket, before Mr. Bell can really have been said to do anything towards his roommate. So I do think this court should require district courts to engage in actual weighing here, and that's really the mistake that I would point to. There was no— What if we look at the video and we say, he didn't do anything wrong. He asked the guy not to snore, and the guy slugs him, and he's bigger, and so then he grabs a broom or some kind of thing to be ready to respond because the guy is coming after him, and the third guy is getting up, and you don't know which side he's necessarily even on, and he's watching the door, and it looks like it's going to be a beat-down of this particular person, and in lots of cases, we're supposed to use our analysis of the video over the district courts. Does that apply in a sentencing context, or do we use the general rule and not the specific rule from the Supreme Court about looking at videos and letting appeals courts say that they trump everything else? Chief Judge Elderod, I think the video is what you should look at here, and I think the reason why we have a lot of decisions saying that this court defers extensively to district courts in their determination of acceptance responsibilities is because the district court engages with the person when they're going through that decision process of whether to plead guilty or not, but here, the sole basis of the district court's analysis for denying acceptance responsibility was this less-than-six-minute incident, and that, as you recount, was captured extensively on video, so this is really a purely legal question about whether the district court accurately analyzed the facts. Is it a legal question, or are we supposed to substitute our own judgment of the facts, like we are told to do in other contexts, like in the 1983 excessive force context when we watch videos? I mean . . . What is the law about whether or not we're supposed to look at the . . . if the video is clear, does the video beat all in the context of sentencing, like it beats all in the context of 1983? I would urge the court that in this context, where the video does show conclusively what happens, and there was no testimony, you know, contrary or illuminative of the video, that the court should rely on the video over everything else. I see that the red light has come on. Thank you. May it please the Court, Laura Durbin for the United States. I'd like to start with first the high-capacity magazine issue, and then go on to the acceptance of responsibility. For purposes of this record, on plain error, this court can affirm the sentence of the district court, because by a preponderance of the evidence, it showed . . . the record shows that Mr. Bell's semi-automatic firearm was capable of accepting the large-capacity magazine for mainly three reasons. First, the PSR, which was not objected to as to this point, established that not only was the firearm close or proximate to the magazine, and second, the caliber. What about the magazine? That it was . . . Oh, it's close to the PSR. Yeah, that it was proximate to the firearm. Okay. Second, Detective Dolan's testimony further supports the application. It was sworn testimony that was subject to cross-examination. And third, there's no evidence in the record that showed non-compatibility of this firearm that the district court ignored, resulting in a clear and obvious . . . But you . . . your client, the government, has to establish that it actually is compatible, not that it's not . . . they don't bear a burden on this at all, do they? I'm talking in the context . . . I'm speaking in the context of clear . . . of clear error. Okay. Let's just . . . Let's take each one of these. So PSR says it's close, but we know proximity doesn't establish compatibility, so that's not enough. That is not enough under Luna Gonzalez. You have to have Dolan, and whether Dolan is enough is the whole ballgame. Isn't that right? I don't think that that's the whole ballgame, because Luna Gonzalez does not say you can't consider . . . But it says it can't be enough, and that's all the PSR says that we can rely upon, that it was near it. Well, and it also includes the caliber. The caliber is not enough in these types of weapons. The caliber is not enough. We don't know the manufacturer. We don't know if they're compatible. This is not the type of weapon that that would be enough. First, that was not in front of the district court. Second, there is no bright-line rule in this circuit that says the court cannot consider whether or not it was near or whether or not it was proximate. You can consider proximity, but proximity is never enough. And that the calibers were the same, were of the same . . . the calibers were the same. Is there any . . . What? . . . that has said . . . I know . . . . . . is a never, never a plus factor? I have found no cases that say that. That doesn't mean that they can't be out there . . . What is this, plain error review? On plain error review. Part of the problem on these, and I'm very sympathetic when there's no objection, the thought of reversing a district court that sees a PSR that's not objected to. You can . . . that's a high, high standard, the burden shifts to opposing counsel. However, the government had a factual basis here, and in the factual basis, there's extensive discussion about the gun. But it, too, like the PSR, does just say, oh, and nearby was a magazine. I mean, you really could have nailed it down there. Obviously, I wish that they had, but I think that's more indicative of this is . . . this was something never in contention. From the very beginning, from his first appearance, where he had motivation to object . . . So, your argument is just a purely no miscarriage of justice, plain error argument?  Yes. That's what it comes down to with these three little factors. Yes. No case that would send it back. Do you agree if we disagree, it goes back, and the two will presumably . . . I guess here's the question. Was the magazine forfeited with the gun? Do you know what happened to the magazine? Actually, I do not know what happened to the magazine. I know the gun was forfeited. I don't remember if in the forfeiture notice . . . I don't think it was in there that the magazine was included. In sentencing, there was an issue about whether the car would be forfeited, but for sure the gun was. Okay. Do we even know that Judge Counts knew about the testimony before the magistrate judge? Because he didn't rely upon it, he's only citing to the PSR. There's nothing that he was saying, oh, and this is enough. He never said it gave him things. It looks to me like this is just a straight up sentencing that says that I've adopted the PSR and we're all moving along. Yes. And the PSR is not enough. You agree with me the PSR does not contain enough information, right? I don't agree with that. Okay. Well, tell me what in the PSR gives you enough information under our precedent in Luna Gonzalez? Put to one side Dolan, since we don't know if Dolan was considered by the district court, and what in the PSR is enough since you said it's enough? Proximity and caliber. And there are two things the district court could make a reasonable inference without objection that the firearm was capable of accepting that. Proximity and caliber are not enough under Luna Gonzalez. Luna Gonzalez does not say that. Luna Gonzalez. And then, what about Lyon? Lyon, there's more in Lyon than, excuse me, there's more in this case than in Lyon. In Lyon. Lyon. I think there's less here than Lyon. We're just disagreeing this morning.  Yeah. But it's a Glock 27 instead of a Glock 40, right? Yes. Yes. Okay. So it's not the same thing. They, you know, and so you're saying that just because it's caliber, we can assume that they go together when our precedent says there must be some evidence that the firearm and the magazine actually fit. The fact that it's caliber is not enough that they actually fit because it's just not the way weapons are manufactured. If the district court had that information in front of it. Well, you don't need any information to know that. You have to, you bear the burden to show they actually fit and caliber doesn't get you there. I'm not, but the, and the district court didn't just have caliber. It also had the proximity. Oh, caliber. I don't. Okay. I, well, you and I disagree about whether caliber and proximity are enough. I don't think they are. And especially when the government has everything at its disposal to clear this up and it knows that it needs to establish this and it's a significant basis for an enhancement. And so we're not, you and I aren't going to agree on that. So maybe somebody else has a question about this point, but I do want to hear from you on the other point for sure. Okay. Well, before you, when you say Lyon was a divided court, could you explain when you say Lyon there was more evidence, that was plain error review too? I meant to say that this case has more evidence than Lyon. Right. Could you just, because I know that it's an unpublished, divided court, could you just quickly explain why this case is less suitable than that one where our court didn't find plain error? I guess I don't. We didn't reverse and remand for more in Lyon. And you're saying here there is even more. So just describe to me why there was less, but still affirmable on plain error. With Lyon, the testimony, there was testimony that the officer, or I don't know if it was an officer or agent, found the firearm, an AR, the manufacturer named the manufacturer, and that he saw in the same house caliber ammunition that was either .223 caliber and .556 caliber. There was no evidence that it actually fit, that they were ever put together. Only in the forfeiture notice did the caliber line up with what the detective testified to at trial. So the forfeiture notice indicated it was an AR-15 with .556 caliber ammunition. Here we have similar caliber, proximity where Mr. Bell is the only person in the vehicle, it is the only gun in the vehicle, and it is only two magazines are found, one inside the firearm and then this one, the 29 round magazine. We're bound by Luna Gonzales, but Lyon's not. We could just say the majority's wrong, the dissent's right. Well, what Luna Gonzales does is it creates a bright line rule of what is not acceptable. Proximity is not a cure-all. This is more than that, and there's no bright line rule that says you can't rely on the caliber and proximity. And under clear error, that would require, it would require an extension of precedent to say so. And clear error cannot, there cannot be clear error when you need extension of that precedent. Okay. Okay. Okay. With respect to the acceptance of responsibility, the court is given a great deference. Can you talk to me about the application of the Scott v. Harris case in this context? Does Scott v. Harris apply or not? You know that case. It's the one that says that we look at the video and the video wins and we use it all the time now. I think it's been the most transformative rule from the Supreme Court in our everyday case resolution of an appeals court in past years because we are supposed to substitute our judgment for that of the district court. Ordinarily, we give wide deference, especially in the sentencing. I don't know if Scott v. Harris has been applied here, but this video is, I think is definitive as to that he wasn't the instigator or even shouldn't, didn't have a responsibility to not defend himself. But go ahead and can you tell me if Scott v. Harris applies in this context or not? First, the standard of review has not changed for acceptance of responsibility. Great deference is given. Deference. But do we defer when we have a video that tells us what the answer is? Well, I think using that standard of review, the court should not defer to Scott v. Harris. The court should defer to the district court's finding of . . . But what kind of finding did the district court actually make here? All that is on the record is that they were fighting. But fighting includes an assault. So there was still criminal conduct that Mr. Bell was engaged in in the video. But he didn't assault anybody. At the end of the video, he does hit. Well, if somebody's bigger than you and beating on you, you don't get to defend yourself when you're locked in a little room and nobody's coming for help? Well, maybe that's why you don't wake a sleeping man. Well, if they're snoring really loud and no one else can sleep in the room and you're in this little room with them, why can't you wake a sleeping man? How is that against the . . . I mean, don't we elbow our spouses when they snore? I mean, I understand they're in prison and they're not in a familial relationship. I don't understand that that's instigating a fight, waking a sleeping man. To me, that doesn't make sense. There's at least four or five other people in that room. They are all hearing if the man was snoring. Yes. Only Mr. Bell gets out of bed, wakes him, and then goes back to his bed. And Mr. . . . I think his name is Brighto. He's . . . clearly there are words exchanged. Mr. Bell then gets up, walks back to the bunk, and that's when the other inmate gets down. The other guy was already sitting up engaged. He was engaging him and stuff. There was words . . . He walks over to him. Mr. Bell walks over to him. Yes. And that's when the other inmate gets out off the bunk. And then slugs him. He does. But had he not, had he just laid down, that confrontation could have ended. And that's what Judge Counts is looking at. Because then it goes on, and then even though he is hit also, Mr. Bell is also hitting. Is there an issue to the judge? Because the judge doesn't tell us, oh, he should have laid back down even if the guy is . . . whatever the guy is saying to him, he should have laid down and he didn't have a right to walk over in the cell. Do we know that Judge Counts thought that? On the record, Judge Counts, he's watching the video, and he says something to the extent of, I know what's going to happen, but I keep hoping that you will go sit back down, that you'll disengage. And he says, I'm hoping that you're not going to fight, but then you fight. And so Judge Counts is looking at the whole entire video, and he considers Mr. Bell's conduct in that four-minute video of where he repeatedly re-engaged Mr. Brighto. We don't really have good guidance for you or defense counsel, correct? All our law in this area is unpopular. Yeah. The law seems to be on point with your position. The guidelines do say great deference. That's all true, but prisoners are housed with other prisoners all the time. Is the government's position that any time they end up in a physical altercation before sentencing, that means they lose exceptional responsibility? Is that sort of the rule of law? Any physical . . . There's . . . I think that would be extending it too far. What do you say the rule of law is, because that seems like a pretty high percentage chance the government's going to be able to get a plea, but then say, don't give him acceptance? I guess it's the . . . I mean, it's not what my position. I would say if they're fighting, yes, these shouldn't get . . . Your primary position is there's enormous deference. We know the judge looked at the video. That's all that there is. He pulled the broom out, threatened. He punches at the end. Yes. Why wouldn't . . . My problems with that, I guess, are nothing in the record suggests that he was even disciplined for this, right? No. You definitely didn't charge him with a 113 assault count? No. If the guideline commentary requires withdrawal from criminal conduct, my difficulty is saying, maybe it's what Judge Elrod's asking, how can we say to a preponderance there was something criminal happening when he was never disciplined, never charged, and there looks like a pretty plausible self-defense that would reduce any criminal exposure? That's my problem, because he did object to this one. Yes. So, we've got to be able to say there's a preponderance that he was doing something criminal, but as Judge Elrod presses, the only time he actually assaults, it's after he's been attacked, and so . . . You want to speak to that? I think as to any time there's fighting, that the government can say, oh, he hasn't disengaged from criminal conduct. I think it's dependent on the circumstance. It's a fact question. First, the question should be, who started this fight? How did this fight initiate? But he did just wake the guy up to stop snoring. I mean, the physical aggression, I may be wrong, I'll look at it again, I thought Brito starts the physical . . . He does start the physical aggression. So then, he would, if anyone were actually thinking of making what he did criminal, what would be looming out there would be self-defense. Right. It's hard. Great deference. We've never actually reversed one of these. Do you think your position is in line with other circuits? I guess, since we've only got an unpublished authority, other circuits could be just as persuasive. Right. Do you think, is there, you must have researched this, are the circuits all agreeing? I can provide a letter. No, no, no, no, no letter. I mean, I just . . . I just don't know what the . . . I guess the question is, has any circuit ever reversed a district court's determination when the facts confirm two cellmates physically wrestled? I'm not aware of any, and I don't know if the circuit has not. With respect to your question about the fact that there was never discipline or never a charge, the guideline, that is not a requirement under the guidelines. It uses the word criminal. I know courts haven't interpreted that, but that's how my brain thinks. We have to . . . the words de-escalate and what's the other one, retreat? Retreat, yeah. That's what the PSR said. Didn't de-escalate, didn't de-escalate, didn't retreat. Sort of consistent with the guideline that voluntarily terminated or withdrawed from criminal conduct, and we know it's not related. It's a little heavy, right? All the district judge said was this signals he didn't withdraw from . . .  Signals. Yes. The snoring incident. With the fact that he . . . I just want to just . . . The fact that he wasn't charged in discipline, those are decisions that are made by either the state at the local level and the detention facility. I don't think that that in any way should control what the district court . . . The district court didn't even say, this is criminal. He never said that. No, the district court . . . He says it signals. Yes. That is correct. The guidelines do require criminal conduct that you don't withdraw from. It's a little imperfect, but . . . It's imperfect. It is imperfect, but I think what the district . . . still on the record, it's clear that the district court is engaging in this question of did he disengage from that criminal conduct, and it finds that he didn't, he did not. He didn't . . . Judge Counsel didn't say it with great particularity, but that the record is clear as to what he was doing, I guess if there are . . . Yes. I do have another question back on the other issue, and am I correct that Detective Dolan didn't actually examine the magazine and the firearm or anything? He just looked at the records and said, oh, they're close together, they're same caliber, therefore, he didn't do anything more than what the PSR is doing. He didn't rely upon any expertise or any factual knowledge. He just looked at the same exact records that we're continuing to regurgitate, so he doesn't give any higher imprimatur of . . . indicia of reliability. On page 88 of the record, he testifies that he read the reports and spoke to the arresting officer. Spoke to the arresting . . . How would that tell us anything relevant to the . . . whether or not the weapons are compatible? From that, I think you can get the inference of speaking to the people who are on the scene that . . . Did the officers have any knowledge about it? Yes. About the gun and the compatibility of the . . . Are they some kind of . . . Sometimes they'll bring in an ATF person, and they'll explain how you can take . . . I've been in sentencing where they brought in an ATF person to explain how the guns all work. This is not that, right? This is not that, but there was not an objection. In most of those cases that you're referencing, there was always an objection. The defendant provided enough rebuttal or enough of an objection to cause the government to put on evidence. That is not here. Here we have Detective Dolan, a 19-year detective with Midland Police Department who was a member of the ATF task force, testifying this magazine belonged to the Glock. Belonged? Belonged is that is part of that gun. That can be part of that gun, and that's his testimony. He then testifies that this magazine is not the usual type of magazine. The fact that he testifies to that and then still says that this mag belonged to it is enough of . . . can plausibly create the inference that the firearm was capable of accepting that magazine. I see that I'm out of time. Thank you very much for taking the time to explain that. Thank you. Thank you. Detective Dolan testified in the magistrate court after reading records and speaking to agents, and his testimony was that there was a 28-round magazine that was recovered. He was mistaken. It was 29 rounds. The testimony admitted . . . That doesn't make any difference though, does it? I think these three inconsistencies together do make a difference to the point that . . . I think that in combination with the fact that he doesn't mention that there was a nine-round magazine attached to the pistol and that he identifies the firearm as a Glock 40 and not a Glock 27 do make a difference when we consider that that was not testimony that was in front of judges. He called it the wrong Glock. Possibly. I don't know what he meant. That's one possible inference. I think if this testimony had happened in front of Judge Counts at sentencing, we could say he called it the wrong Glock. The district court understood what he was talking about. 28-29 doesn't usually matter for whether they're compatible though. I'm sorry? 28-29. That's not determinative on anything of compatibility though, is it? What is it? The difference between 28 and 29. Yes. That doesn't get you anywhere. I agree, Judge Elrod, but I think it speaks to the reliability of Detective Dolan's testimony and his knowledge about this case. That's why I emphasize it. And then finally, Judge Higginson, the other circuits too . . . I have not found a case where other circuits have considered whether just fighting is acceptance of responsibility. There is an Eighth Circuit case where I cite the concurring opinion in my opening brief in which I think an inmate helped open a cell door, which then facilitated an assault. It was a pretty violent assault. The concurrence in that case said that while commission of another offense like an assault is relevant to the determination of whether a person has truly accepted responsibility, it recognized the possibility that this case poses, which is that a person's participation in a fight or even defense of themselves in a fight while incarcerated does not negate the strong support that their timely guilty plea shows towards their acceptance of responsibility. Is your primary argument the one we're suggesting, which is he would have had a self-defense argument to any implied criminal aspect to his fighting? I mean, I think my primary argument is that if the government wants to take away acceptance of responsibility, it has to say this is the crime he, you know, committed and the district court has to make some findings that he committed this offense. I think if the district court had said he committed assault and then maybe we would have gotten into discussion of whether it was self-defense, um, that would have . . . and the district court would have weighed that. But, Mr. Counsel, I'm not remembering the transcript said in the . . . it's clear that counsel is actually looking at the exact same video we're looking at. I agree. Okay. So, he's, he's looking at it, he's seeing the broom, he's seeing the punch and it was . . . but you did preserve the objection, so if we were to remand, presumably what you'd want to do is say, well, yeah, there was a fight, but he only acted in self-defense. I think . . . well, so it would depend, I think, on the rationale of the remand. If the rationale of the remand was that the district court didn't properly weigh the evidence, then I think, yes, the, the, the instruction could be that the district court should engage in, you know, whether Mr. Bell's behavior constituted, um, a, uh, an assault, um, and whether there was a valid defense to that, like self-defense or . . . He does . . . . . . mutual harm. I'm sorry. . . . is an assault. He does hit him physically. He, he tries to. From my viewing of the video, he misses, um, and kind of, like, maybe brushes his face as he's, like, pulling back, um, when the guards enter the, the cells. I'm not certain that there was an assault on my viewing of the video, um, but if the, but I do think that, um, yes, I think if you were to remand, to engage in that weighing, um, that would be the necessary weighing. I think the court can also, uh, you know, view the video, uh, and determine that there wasn't an assault here, that this was . . . How would you distinguish Phillips? I know it's unpublished, but how would you distinguish Phillips? I, so I don't have Phillips readily handily, handily, but I think that the distinction is that in Phillips, there was a finding that there was an assault, um, by the district court that was uncontested that this was a, you know, a, a one-sided assault by somebody. Um, I think that's what most of the, the court's unpublished cases just describe the underlying conduct as an assault and move on. And here, there's real question, uh, about whether Mr. Bell's behavior was justified in response to the aggression from Mr. Brito. If there's nothing further, that's all I have. Thank you very much. We appreciate your arguments in this case.